UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET JANDREJACK,<br><br>        Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 2:17-cv-1455-KJN<br><br><br><u>ORDER</u> |

Plaintiff Janet Jandrejack seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") that plaintiff was not disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] Plaintiff filed a motion for summary judgment, which the Commissioner opposed by filing a cross-motion for summary judgment. (ECF Nos. 15, 16.) Thereafter, plaintiff also filed a reply brief. (ECF No. 17.) For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 8, 10.)

1

I.     BACKGROUND

Plaintiff was born on September 12, 1959; has at least a high school education; can communicate in English; and previously worked as an office manager for the State of California. (Administrative Transcript ("AT") 32, 56.)[2] On January 22, 2014, plaintiff filed an application for DIB, alleging that she was unable to work as of August 9, 2012, due to lumbar degenerative disc disease, morbid obesity, neuropathy, diabetes, chronic obstructive pulmonary disease, irritable bowel syndrome, fatigue, osteoarthritis, and hypothyroidism. (AT 101, 195, 209.) After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on December 11, 2015, and at which plaintiff, appearing with counsel, and a vocational expert ("VE") testified. (AT 48-88.) The ALJ subsequently issued a decision dated March 2, 2016, determining that plaintiff had not been disabled, as defined in the Act, from August 9, 2012, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 19-34.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 23, 2017. (AT 1-3.) Plaintiff subsequently filed this action on July 13, 2017, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.    ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly discounted the opinion of plaintiff's treating physician; (2) whether the ALJ erroneously failed to assess if plaintiff was entitled to a closed period of disability; and (3) whether the ALJ improperly failed to consider plaintiff's non-severe mental impairments.

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff met the insured

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

3

status requirements of the Act for purposes of DIB through December 31, 2018. (AT 21.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since August 9, 2012, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: morbid obesity, status-post remote and gastric band implantation and removal and recent bariatric surgery; lumbar degenerative disc disease. (AT 22.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 24.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently. The claimant can sit for 6 hours and stand and or walk for 4 hours during an 8-hour workday. She must be able to alternate between sitting and standing, every 30 minutes for 1-2 minutes, so long as she does not have to leave the vicinity of the workstation or be off task. The claimant can never climb ladders, ropes, or scaffolds, and can occasionally stoop, kneel, crouch, crawl, and balance. The claimant must avoid more than occasional exposure to extreme cold or pulmonary irritants that include dust, gases, odors, and fumes. The claimant must avoid unprotected heights, unprotected moving mechanical machinery, and vibrations.

(AT 25.) At step four, the ALJ determined, based on the VE's testimony, that plaintiff was capable of performing past relevant work as an office manager. (AT 32.) In the alternative, the ALJ proceeded to step five and found, based on the VE's testimony, that plaintiff was also capable of performing other jobs existing in significant numbers in the national economy. (AT 32-34.)

Consequently, the ALJ concluded that plaintiff had not been disabled, as defined in the Act, from August 9, 2012, plaintiff's alleged disability onset date, through March 2, 2016, the date of the ALJ's decision. (AT 34.)

---

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

## Plaintiff's Substantive Challenges to the Commissioner's Determinations

*Whether the ALJ improperly discounted the opinion of plaintiff's treating physician*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

1    In this case, plaintiff's treating physician, Dr. Elizabeth Madarang, completed a medical source statement opining *inter alia* that plaintiff could sit/stand/walk for less than 2 hours a day; would need to take unscheduled breaks of 5-15 minutes every 30-60 minutes; would be off task 25% or more of the day; was incapable of even low stress work; and would be absent from work more than four days per month. (AT 358-64.) Because Dr. Madarang's opinion was contradicted by other medical opinions in the record, the ALJ was required to provide specific and legitimate reasons to discount Dr. Madarang's opinion. As discussed below, the ALJ properly discharged that obligation.

The ALJ reasonably observed that Dr. Madarang's extreme opinion was unsupported by the objective medical records, which largely documented conservative treatment with oral medication and no physical therapy or injections. (AT 29-30.) See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"). Furthermore, as the ALJ noted, plaintiff herself conceded that her medications had been relatively effective in controlling her pain. (AT 28-29, 63 [if plaintiff takes her medication consistently, pain remains at a "low hum" or level of 2-4 out of 10; "with my medication, I can easily sit for four hours, and possibly six"].) A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ also rationally pointed to inconsistencies concerning Dr. Madarang's opinion, which detracted from its reliability. For example, although Dr. Madarang suggested that plaintiff was unable to walk even a single city block without rest or severe pain, she also indicated that plaintiff had to walk for 5 minutes at least twice an hour. (AT 30, 359.) Notably, plaintiff herself testified that she could walk up to 2 miles fairly regularly. (AT 63-64.)

The ALJ further permissibly found that Dr. Madarang's extreme limitations were inconsistent with the weight of the other medical opinions in the record. (AT 29-31.) Dr. Joseph

Serra, an orthopedic surgeon, reviewed plaintiff's records and medical history (including her lower back and knee issues, prior surgeries, and other medical issues such as obesity, diabetes, numbness/tingling, diarrhea, high blood pressure, hypothyroidism, asthma, etc.); personally examined plaintiff; and opined that plaintiff was capable of performing the specific job duties of her prior job and that there was an "exaggeration of complaints. The subjective complaints far outweigh any objective findings." (AT 1068-76, 1077-78, 1089-94.) Additionally, Dr. Narinder Dhaliwal, an internal medicine specialist, reviewed plaintiff's records, personally examined plaintiff, and likewise opined that plaintiff was not substantially incapacitated from performing the duties of her prior job. (AT 1079-88, 1095-98.) Furthermore, Dr. Fariba Vesali, a physical medicine and rehabilitation specialist, personally examined plaintiff and opined that plaintiff could walk/stand/sit for 6 hours each in an 8-hour day, with breaks every 2 hours; lift/carry 50 pounds occasionally and 25 pounds frequently; and perform frequent postural activities. (AT 1104-07.) Because those physicians personally examined plaintiff and made independent clinical findings, their opinions constitute substantial evidence on which the ALJ was entitled to rely.[5] To be sure, another orthopedist who evaluated plaintiff, Dr. Anthony Bellomo, concluded that plaintiff was unable to perform her prior work, at least for a defined period of time. (AT 758-65.) However, it is the ALJ's role to resolve inconsistencies in the medical evidence, and the court defers, as it must, to the ALJ's rational resolution of such inconsistencies.

Consequently, the ALJ's evaluation of Dr. Madarang's opinion was supported by the record and by the proper analysis.

////

////

////

---

[5] Plaintiff's briefing appears to contend that the opinions by those physicians did not actually controvert Dr. Madarang's opinion, because some of the opinions were formed in the process of plaintiff's worker's compensation claim, and the individual opinions were focused on different aspects of plaintiff's medical condition (orthopedic vs systemic medical issues). However, each physician prepared a detailed report with his or her findings, and the reports taken together extensively cover plaintiff's various medical impairments. Moreover, the findings by those physicians plainly controverted the extreme limitations assessed by Dr. Madarang.

*Whether the ALJ erroneously failed to assess if plaintiff was entitled to a closed period of disability*

Plaintiff underwent gastric bypass surgery in March 2014, and it appears undisputed that many of her systemic medical impairments, such as diabetes, irritable bowel syndrome, and asthma, went away after some significant weight loss. However, according to plaintiff, her orthopedic concerns remain. (See, e.g., AT 56-57, 70-71.) Plaintiff posits that the ALJ should have, at a minimum, considered whether plaintiff was eligible for a closed period of disability before her gastric bypass surgery.

However, in this case, the ALJ carefully summarized the medical evidence and concluded that, giving plaintiff "every benefit of the doubt," plaintiff was limited to a significantly reduced range of sedentary work throughout the relevant period. (AT 25, 31.) The ALJ noted that the RFC assessment accounted for plaintiff's various systemic medical impairments, most of which resolved after her gastric bypass surgery, as well as her ongoing pain and limitations associated with her orthopedic impairments. (See, generally, AT 25-32.) Importantly, the medical evidence, as appropriately weighed by the ALJ, substantially supports the ALJ's conclusion in that regard, even if this court may have weighed the evidence differently upon a *de novo* review. As such, remand for consideration of a closed period of disability is not compelled by this record.

*Whether the ALJ improperly failed to consider plaintiff's non-severe mental impairments*

The medical evidence of record, as appropriately weighed by the ALJ, does not include any specific mental functional limitations that the ALJ failed to incorporate into the RFC. As such, any failure by the ALJ to explicitly discuss non-severe mental impairments in the decision was, at most, harmless error. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

V.  CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is GRANTED.

3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

Dated: October 5, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE